UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KEVIN WHITFORD,

              Plaintiff,                    **DECISION AND ORDER**

     v.
                                            6:23-CV-06493 EAW

NATIONAL RAILROAD PASSENGER
CORPORATION,

              Defendant.
_____

# INTRODUCTION

Plaintiff Kevin Whitford ("Plaintiff") is a former employee of defendant National Railroad Passenger Corporation ("Defendant" or "Amtrak") who alleges that Defendant failed to accommodate his sincerely held religious objection to receiving a COVID-19 vaccination. (Dkt. 1). Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Religious Freedom Restoration Act ("RFRA"), and the New York State Human Rights Law ("NYSHRL"). (*See id.*).

Defendant seeks dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiff's claims are "either precluded (Federal Claims) or preempted (State Claims) under the Railway Labor Act ('RLA')[.]" (Dkt. 10-4 at 9). In the alternative, Defendant seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (*Id.*).

For the reasons below, the Court agrees that it lacks subject matter jurisdiction over Plaintiff's claims and accordingly dismisses the complaint without prejudice.

**BACKGROUND**

I.  **Factual Background**

Defendant hired Plaintiff to work as a locomotive engineer in March 2006. (Dkt. 1 at ¶¶ 9, 28). He held that position until August 2022. (*Id*. at ¶ 9). Plaintiff "operated the trains for the Defendant at their business branch located at 27th and Lockport Road, in Niagara Falls, New York 14305." (*Id*. at ¶ 10).

Plaintiff is a member of the Brotherhood of Locomotive Engineers and Trainmen ("BLET") union. (*Id*. at ¶ 34). Defendant and the BLET union are parties to a collective bargaining agreement ("CBA"). (Dkt. 10-3).[1] Rule 3 of the CBA governs seniority and Rule 6 governs "Bulletins and Assignments." (*Id*.). Together, Rules 3 and 6 of the CBA set forth the process by which engineers bid on and receive assignments, including situations in which an engineer may exercise his seniority to displace a more junior engineer. (*See id*.). Rule 6(l) of the CBA specifically addresses the process by which "regular runs" can be "rearranged," and discusses the fact that any such rearrangement must "group[] such runs consistent with seniority." (*Id*. at 10).

"Plaintiff is a practicing Roman Catholic and has adhered to the principles of the Catholic Church for at least 40 years." (*Id*. at ¶ 46). Plaintiff's sincerely held religious beliefs "preclude[] him from accepting any one of the three currently available COVID-19 vaccines[.]" (*Id*. at ¶ 49). Around July 2021, Defendant started discussing a possible

---

[1]  Plaintiff did not attach a copy of the CBA to his complaint, but a court may consider evidence outside the pleadings when deciding a motion under Rule 12(b)(1). *See Harty v. W. Point Realty, Inc*., 28 F.4th 435, 441 (2d Cir. 2022).

COVID-19 vaccine mandate with its staff. (*Id*. at ¶ 43). "Plaintiff immediately objected to the mandate as taking any COVID-19 vaccine violated his sincerely held religious beliefs." (*Id*.).

Defendant adopted a policy requiring all active Amtrak employees to be fully vaccinated against COVID-19 effective November 22, 2021. (*Id*. at ¶ 45). Defendant has a policy allowing for religious accommodations for those with sincerely held religious beliefs. (*Id*. at ¶ 44). Plaintiff applied for a religious accommodation on August 30, 2021. (*Id*. at ¶ 45). "Plaintiff's accommodation request was granted, and he was allowed to continue working while still providing weekly COVID saliva tests, wearing protective eye gear and masks." (*Id*. at ¶ 61).

During the COVID-19 pandemic, Defendant's trains originally ceased traveling to Canada. (*See id*. at ¶ 69). "[H]owever, in June 2022, that changed." (*Id*.). The Canadian government had previously issued an emergency order requiring all foreign nationals entering Canada to be fully vaccinated against COVID-19 and to provide evidence of the same. (*Id*. at ¶¶ 70, 72). "Since Plaintiff was not vaccinated, this posed a problem for his current employment position." (*Id*. at ¶ 73).

Anticipating issues when the Canadian border reopened, Plaintiff contacted John Berben ("Berben"), the local chairman for the BLET union, Division 752, in early 2022 to express his concerns about the Canadian vaccine mandate. (*Id*. at ¶¶ 73-74). On April 18, 2022, Plaintiff sent an email to Berben "about the Canadian job route, the Canadian border restrictions, and the need for a reasonable accommodation." (*Id*. at ¶ 75). Berben

responded that he had told Anthony Gangeme ("Gangeme"), the vice local chairman for Division 752 of the BLET union, to "talk to the engineers out there and figure it out." (*Id*.).

Plaintiff sought an accommodation involving a "couplet" of jobs. (*Id*. at ¶ 79). "When jobs are advertised for a bid, they are referred to as a couplet." (*Id*.). Plaintiff's proposed accommodation was "alternative train routes that would have allowed him to continue working unvaccinated while bypassing the Canadian border." (*Id*. at ¶ 97). Plaintiff alleges that he had "seniority and there were other junior engineers available to manage the Canadian routes." (*Id*. at ¶ 95).

Gangeme "execut[ed] a discriminating vote of mainly junior engineers as it relates to adjusting jobs as an accommodation for the . . . engineers in the Niagara Falls crew base." (*Id*. at ¶ 77). "[T]he crew base . . . voted not to adjust jobs for the Plaintiff." (*Id*. at ¶ 78).

The leadership of the BLET union suggested to Plaintiff that he "could exercise his seniority and relocate to another crew base at Plaintiff's own expense. The other crew base was in Albany, New York. This was the only option considered by the leadership of the BLET union." (*Id*. at ¶ 85). This option was not feasible for Plaintiff. (*Id*. at ¶ 88).

Plaintiff was placed on unpaid work furlough on June 20, 2022. (*Id*. at ¶ 109). On August 9, 2022, Berben sent an email saying that the BLET union was "working on a couplet with a couple different options to get [Plaintiff] working." (*Id*. at ¶ 111). That same day, "Plaintiff sent an email to the Defendant stating that regrettably, he would need to seek early retirement." (*Id*. at ¶ 116).

## II. Procedural Background

Plaintiff commenced this action in August 2023. (Dkt. 1). Defendant filed the instant motion on November 29, 2023 (Dkt. 10), which Plaintiff opposed (Dkt. 16; Dkt. 17). Defendant completed the briefing by filing a reply. (Dkt. 19). The Court held oral argument on September 12, 2024, and reserved decision. (Dkt. 24).

## DISCUSSION

### I. Subject Matter Jurisdiction

#### A. Legal Standard

"Subject matter jurisdiction is a threshold question that must be resolved before proceeding to the merits." *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (quotation and alteration omitted). "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it . . . ." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.á.r.l*, 790 F.3d 411, 416-17 (2d Cir. 2015) (quotation and citation omitted). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). As federal courts are courts of limited jurisdiction, they may not decide cases where subject matter jurisdiction is lacking. *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000).

B.     **Lack of Subject Matter Jurisdiction**

Defendant argues that this Court lacks subject matter jurisdiction pursuant to the RLA.[2]  "Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes" within the railroad industry.  *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994); *see also Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 321 (2004) ("A principal purpose of the RLA is to provide for the prompt and orderly settlement of all disputes over pay, rules, or working conditions and the interpretation and application of agreements concerning pay, rules, or working conditions.").  To that end, "the RLA establishes a mandatory arbitral mechanism for the prompt and orderly settlement of two classes of disputes." *Hawaiian Airlines*, 512 U.S. at 252 (quotation omitted).  The two classes are "major disputes," which "relate to the formation of collective bargaining agreements or efforts to secure them," and minor disputes, which "grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." *Id*. at 252-53 (quotations and alterations omitted).  Minor disputes under the RLA are "those involving the interpretation or application of existing labor agreements." *Id*. at 246.  Both major and minor disputes are subject to the RLA's mandatory arbitration provisions, and thus are outside the jurisdiction of the federal courts. *Id*. at 252-53.

"A plaintiff's claim is properly characterized as a minor dispute (and is therefore subject to mandatory and exclusive arbitration under the RLA) when the resolution of the

---

[2]     There is no dispute that Defendant is a "carrier" as defined in the RLA.  *See* 45 U.S.C. § 151.

plaintiff's claim requires interpretation of the CBA." *Brown v. Illinois Cent. R.R. Co.*, 254 F.3d 654, 658 (7th Cir. 2001); *see also Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 273 (2d Cir. 2005) ("[M]inor disputes must be heard in the first instance before arbitral panels, not courts, and state-law claims that are disguised minor disputes are therefore preempted by the RLA."); *Roache v. Long Island R.R.*, 487 F. Supp. 3d 154, 167 (E.D.N.Y. 2020) ("claims requiring the interpretation of a bargained-for agreement, such as the CBA here, or claims growing out of disagreements over how to give effect to such agreements, are minor disputes over which federal courts lack jurisdiction" (quotation omitted)). This is true even where a claim "is grounded upon rights which stem from some source other than the CBA (such as state law)[.]" *Brown*, 254 F.3d at 658.

"Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted" or precluded by the RLA. *Hawaiian Airlines*, 512 U.S. at 260 (citation omitted). "Claims or rights 'independent' of the CBA—that is, where a court is presented with 'purely factual questions' that do not depend on the meaning of a CBA's provisions—may be resolved in federal court." *Roache*, 487 F. Supp. at 167 (quoting *Hawaiian Airlines*, 512 U.S. at 261-63).

Defendant argues that all of Plaintiff's claims are preempted or precluded by the RLA, because they "ultimately turn[] on the appropriate interpretation of the CBA." (Dkt. 10-4 at 18). Defendant notes that Plaintiff's theory of this case is that "it would not have constituted an undue hardship for Amtrak to have permitted him to assume a different route of his own creation (i.e., by displacing other engineers from theirs) because he had seniority and other engineers with allegedly lesser seniority could have assumed the Canadian

routes." (*Id.*). But, Defendant argues, accepting this theory would require a factfinder to interpret Rules 3 and 6 of the CBA. (*Id.*). Plaintiff argues in opposition that the RLA does not "preclude independent federal statutory claims from its jurisdiction because they are not minor disputes" and that his claims are not conclusively resolved by the CBA. (Dkt. 16 at 19-20).

"Courts are divided over whether RLA precludes a railroad employee from prosecuting a Title VII claim in a court." *Prokopiou v. Long Island R. Co.*, No. 06 CIV. 2558 KNF, 2007 WL 1098696, at *3 (S.D.N.Y. Apr. 9, 2007); *see also Roache*, 487 F. Supp. 3d at 167 ("courts have long been divided on their approach to the issue of RLA preclusion of discrimination claims"). The Fourth, Fifth, and Sixth Circuits have held that claims arising under Title VII can constitute minor disputes under certain circumstances. *See Odell v. Kalitta Air, LLC*, 107 F.4th 523 (6th Cir. 2024); *Polk v. Amtrak Nat'l R.R. Passenger Corp.*, 66 F.4th 500, 504 (4th Cir. 2023), *cert. denied*, ___ U.S. ___, 144 S. Ct. 553 (2024); *Carmona v. Sw. Airlines Co.*, 536 F.3d 344, 349 (5th Cir. 2008). The Seventh Circuit has similarly concluded that a claim regarding an employer's failure to provide an accommodation brought under the Americans with Disabilities Act ("ADA") was precluded as a minor dispute. *Brown*, 254 F.3d at 668; *see also Schiltz v. Burlington N. R.R.*, 115 F.3d 1407, 1415 (8th Cir. 1997) (finding claim brought under the Age Discrimination in Employment Act to be a minor dispute). By contrast, the Ninth Circuit held in *Felt v. Atchison, Topeka & Santa Fe Ry. Co.*, 60 F.3d 1416 (9th Cir. 1995) that the plaintiff's Title VII religious accommodation claim was not precluded by the RLA. *Id.* at

1420. The parties have not cited, nor has the Court discovered in its own research, any prior cases considering whether the RLA precludes a claim under RFRA.

It is clear from the case law that the Court's preclusion/preemption analysis is a fact-intensive inquiry and must turn on the particulars of the claims asserted. *See, e.g.*, *Odell*, 107 F.4th at 531 ("We begin by looking at the elements of the Pilot Plaintiffs' Title VII and ADA claims, to determine if resolving them requires us to interpret the CBA.").[3] Courts have considered a variety of non-exhaustive factors in resolving this question, such as whether a litigant is a party to the CBA; whether the plaintiff's claims invoke rights or procedures under the CBA; and whether resolving the claims will "require the court to address relationships that have been created through the collective bargaining process and to mediate a dispute founded upon rights created by a CBA." *Id.* at 530 (quotation and citations omitted).

Having carefully reviewed Plaintiff's complaint, the CBA, and the parties' arguments, the Court finds that Plaintiff's claims cannot be resolved without interpreting the CBA. With respect to Plaintiff's Title VII and NYSHRL claims, the Court finds

---

[3] To the extent Plaintiff is arguing that federal statutory claims can never be precluded by the RLA, the Court rejects that argument. "There is good reason not to carve out federal claims from the RLA's preclusive scope. Congress understood minor disputes—that is, disagreements over the 'interpretation or application' of a CBA—to be destabilizing in and of themselves." *Polk*, 66 F.4th at 505. "A claim brought under an independent federal statute is precluded by the RLA . . . if it can be dispositively resolved through an interpretation of a CBA." *Brown*, 254 F.3d at 668; *see also Polk*, 66 F.4th at 504 ("Polk's proposition that a Title VII claim cannot be a minor dispute, however, runs headlong into Supreme Court guidance, circuit court precedent, and the congressional judgments behind the RLA. While Polk is entitled to seek a remedy for workplace discrimination, the RLA accords her the avenue for such relief in arbitration.").

persuasive the Sixth Circuit's analysis in *Odell*, which presented a factual scenario strikingly similar to the one at issue here.[4] The plaintiffs in *Odell* were pilots whose employer had implemented a COVID-19 vaccine mandate. *Id*. at 524. The plaintiffs sued under Title VII and ADA "claiming that the mandate discriminated against them on the basis of their religious beliefs and/or disabled status." *Id*. at 526. "The district court found that, because the Pilot Plaintiffs were subject to a collective bargaining agreement ('CBA'), the [RLA] precluded it from hearing certain of their Title VII and ADA claims, which must first go through arbitration as minor disputes." *Id*.

The Sixth Circuit affirmed the district court's decision, explaining that "[i]f an employee can show all the elements of their claim without invoking the CBA's terms, that claim is sufficiently independent of the CBA and can be heard by a federal court." *Id*. at 530. But if a claim is "inextricably intertwined" with the CBA, then it is precluded or preempted. *Id*.

In *Odell*, one of the accommodations that the pilot plaintiffs had proposed to their employer was that it "not schedule unvaccinated pilots on flights to countries with vaccine requirements." *Id*. at 531. That proposed accommodation "could displace the bids of other . . . pilots and impinge their seniority rights and accordingly would necessarily entail interpreting the CBA." *Id*. (quotations omitted). In other words, "[d]etermining whether adjusting flight schedules would constitute a sufficiently undue hardship to [the defendant] would necessarily require a court to interpret the CBA to determine whether, and to what

---

[4] The Sixth Circuit issued its decision in *Odell* on July 9, 2024, after briefing on the instant motion was completed.

extent, senior pilots' bidding preferences would be impacted." *Id*. at 532. "Because the Pilot Plaintiffs' Title VII and ADA failure-to-accommodate claims [could not] be resolved in full without interpreting the CBA," the Sixth Circuit held that they were minor disputes and that a federal court was precluded from hearing them. *Id*.

The same analysis applies here. All of Plaintiff's claims in this case are premised on his argument that Defendant could and should have created and allowed him to bid on a new job route that would have allowed him to bypass the Canadian border, notwithstanding that the other members of his union had voted not to make any such changes. (*See* Dkt. 1 at ¶¶ 154, 171, 185, 197-98). Plaintiff does not dispute that the reasonableness of his proposed accommodation is dispositive of his Title VII and NYSHRL claims.[5] (*See, e.g.*, Dkt. 16 at 24 (arguing that his Title VII and NYSHRL discrimination claims are plausibly alleged because "[t]here would have been no undue hardship on the Defendant to allow [Plaintiff] the opportunity to bid on his alternative job route proposal")). But resolution of that issue would require a factfinder to interpret the CBA—specifically, a factfinder would have to determine whether Rules 3 and 6 of the

---

[5] "Title VII . . . does not require an employer to deny the shift and job preference of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others." *Doughty v. Dep't of Developmental Servs. STS*, 607 F. App'x 97, 98-99 (2d Cir. 2015) (quotation omitted); *see also Cosme v. Henderson*, 287 F.3d 152, 161 (2d Cir. 2002) ("[I]n the usual case, employers are not required to breach an agreed-upon seniority system to accommodate the religious needs of employees."); *Brown*, 254 F.3d 654 ("[R]equested accommodations which would interfere with the bona fide seniority rights of other employees are unreasonable as a matter of law, and not mandated by the ADA."). Indeed, the Supreme Court recently explained that its case law holds that Title VII does not "require an accommodation that involuntarily deprive[s] employees of seniority rights." *Groff v. DeJoy*, 600 U.S. 447, 462 & n.10 (2023).

CBA would, as Plaintiff alleges, have allowed Plaintiff to use his seniority to force other engineers into bidding on different routes notwithstanding that the Niagara Falls crew base had voted not to make any such adjustments, or if doing so would have violated the CBA.

Plaintiff's opposition to the motion to dismiss makes clear that his theory of this case depends on a factfinder accepting his interpretation of the CBA.  For example, he argues that under Rule 6 of the CBA, "when there was a change in time beyond one hour, all jobs would go up for bid," and so his alternative proposals could have been included in Bulletin #25, dated June 10, 2022.  (Dkt. 16 at 29).  Plaintiff further invokes his seniority as the reason that other engineers should have been required to "operate the trains on the Canadian routes."  (*Id*. at 13).  And Plaintiff acknowledges that his alternative route proposal would have impacted the pay and hours of at least one other engineer.  (*Id*.).  Indeed, Plaintiff's complaint indicates that his proposal would have required another engineer to go from having three consecutive "rest" days (Monday through Wednesday) to having two non-consecutive "rest" days (Monday and Thursday).  (*See* Dkt. 1 at ¶ 98).  Similarly, at oral argument, Plaintiff's counsel repeatedly invoked the CBA's terms in arguing that Defendant could and should have given him the opportunity to bid on the alternative routes he had proposed.

Plaintiff's counsel contended at oral argument that Plaintiff's claims could not be conclusively resolved by reference to the CBA, because the CBA does not contain explicit provisions regarding religious exceptions to vaccine requirements.  The Court is not persuaded by this argument.  Plaintiff does not allege that Defendant refused, as a matter of its own policy, to provide him a religious accommodation.  To the contrary, Plaintiff

acknowledges that Defendant accommodated his religious beliefs by permitting him to wear a mask and undergo weekly testing in lieu of vaccination.  Instead, the dispositive issue presented by Plaintiff's claims is what options Defendant had available to allow Plaintiff to avoid having to travel to Canada for work in light of the Canadian government's imposition of a vaccination requirement.[6]  That question—which is specifically about how Amtrak engineers are assigned to various routes—depends on the CBA for resolution.

Plaintiff's counsel also argued that Defendant ignored Plaintiff's attempts to discuss adjusting the routes, and that this issue is unrelated to the CBA.  But Plaintiff affirmatively alleges in his complaint that when he spoke to his supervisor "about possible changes to his schedule," his supervisor told him it was a "union issue."  (Dkt. 1 at ¶ 80).  In other words, by Plaintiff's own allegations, the lack of engagement by Defendant was because Defendant took the position that whether or not to rearrange the routes was within the BLET union's purview.  The validity of that position cannot be assessed without reference to the CBA.

As to Plaintiff's claim under RFRA, the parties agreed at oral argument that the analysis was similar to the analysis for Plaintiff's Title VII and NYSHRL claims.  Under RFRA, "the Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person is in furtherance of a compelling governmental interest and is the least restrictive means necessary of furthering that compelling government interest."  *Newdow v. Peterson*, 753 F.3d 105, 108–09 (2d Cir.

---

[6]   Plaintiff's counsel confirmed at oral argument that Plaintiff is not arguing that Defendant could or should have defied the Canadian government's vaccine mandate.

2014) (quotation omitted).[7]  Because RFRA requires an inquiry into what means were available to the government in achieving its objectives, Plaintiff's RFRA claim could not be resolved without determining whether the CBA permitted Defendant to take the steps that Plaintiff contends it should have taken.  Plaintiff's RFRA claim, like his Title VII and NYSHRL claims, is properly classified as a minor dispute under the RLA, and is subject to the RLA's mandatory arbitral mechanism.

In sum, Plaintiff's claims invoke bidding and seniority procedures governed by the CBA and cannot be resolved without determining whether Defendant could have provided his requested accommodation consistent with the CBA.  His claims are therefore properly characterized as "minor disputes" under the RLA, and subject to the mandatory arbitration provisions of that statute, depriving this Court of jurisdiction.  The Court dismisses Plaintiff's claims without prejudice for lack of subject matter jurisdiction.

## II.    Failure to State a Claim

In addition to arguing lack of subject matter jurisdiction, Defendant has also argued that Plaintiff fails to state a claim under Rule 12(b)(6).  Having concluded that it lacks subject matter jurisdiction, the Court does not reach these arguments.  *See One Techs., LLC*

---

[7]    Defendant has argued that RFRA does not apply to Amtrak in its capacity as an employer, because Amtrak is not considered an agency or instrumentality of the government for such purposes. *Compare* 42 U.S.C. § 2000bb-2(1) (defining "government" for purposes of RFRA as "a branch, department, agency, instrumentality, and official . . . of the United States or a covered entity") *with* 49 U.S.C. § 24301 ("Amtrak . . . is not a department, agency, or instrumentality of the United States Government").  The Court need not reach this argument, in light of its holding on subject matter jurisdiction.  But the fact that RFRA only applies to actions taken by the government likely explains the lack of any case law considering the intersection between the RLA and RFRA.

*v. Amazon.com, Inc.*, 860 F. App'x 785, 788 (2d Cir. 2021) (affirming district court's judgment dismissing for lack of personal jurisdiction and improper venue, but vacating alternative holding dismissing under Rule 12(b)(6), explaining the district court lacked the power to dismiss the complaint for failure to state a claim).

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to dismiss (Dkt. 10) because it lacks subject matter jurisdiction, and dismisses the complaint in its entirety without prejudice. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  September 17, 2024
        Rochester, New York